## CHRISTIAN OLSON vs. PETER P. SWENSEN, Sheriff.

Submitted on briefs April 14, 1893.   Reversed June 16, 1893.

### Evidence of a Title Fraudulent as to Creditors.

Evidence *held* insufficient to make a case in behalf of plaintiff for the consideration of the jury.

### Admissions of Plaintiff are Competent Evidence.

Upon the cross-examination of the plaintiff, his admissions or declarations, made to third parties, touching the ownership of the property in controversy, *held* competent.

### Declarations of Third Persons not Evidence.

But evidence of the declarations of third persons, not parties to the suit, respecting such ownership, though in possession of the property, *held* inadmissible in a suit between other parties involving the title thereto.

Appeal by defendant, Peter P. Swenson, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made August 13, 1892, denying his motion for a new trial.

Sidle-Fletcher-Holmes Company, a corporation, recovered a judgment August 17, 1891, in the District Court of Hennepin County, against Samuel Olson and Christine, his wife, for $239.53 for flour sold them. A writ of execution was issued thereon, and delivered for service to the defendant, who was then sheriff of that county. He levied upon and sold two horses, a top buggy and a canvas-covered wagon to satisfy the judgment.

Their son Christian Olson, the plaintiff, then appeared and claimed the property, and brought this action against the sheriff to recover its value. He testified that he bought and paid for the property at various times two to five years previous to its seizure, and that he left it with his father, a baker, to be used in his "Riverside Bakery" business. Plaintiff was twenty-six years old, unmarried, and lived and worked with his father up to March 1, 1890, when he went to Madelia, and resided there until Christmas, 1891, when he returned, and again lived and worked with his father. He testified that he had an interest in his father's business, but settled with him and got about square with him just before going to Madelia, but

left this property with him. He admitted that he allowed his father to use the property and mortgage it as his own. On cross-examination he was asked if he ever gave a report to the Bradstreet Commercial Agency as to this property, and who owned it, and, if he had, when and what the report was. This was objected to and excluded, and defendant excepted to the ruling.

The plaintiff had a verdict for $192.60. Defendant made a case containing all the evidence and his exceptions, and it was signed and filed, and on it he moved for a new trial on the ground that the verdict was not justified by the evidence and was contrary to law, and for errors of law occurring at the trial. The motion was denied, and he appeals.

*A. H. Noyes* and *Al. J. Smith,* for appellant.

The Sidle-Fletcher-Holmes Co. had been dealing with S. Olson or the Riverside Bakery before the plaintiff went to Madelia. This property had been used by the Riverside Bakery. When plaintiff left, he left the property with the Riverside Bakery, and allowed it to be used as before. Later, as he tells us, he gave his parents permission to mortgage the property. The control and constant use and right to dispose of the property was given by plaintiff to his parents. He knew that all of the property was being used in the business of the Riverside Bakery, and was, tacitly at least, held out to creditors as his father's property. He thereby strengthened the father's credit. The plaintiff is now estopped from denying his parents' title to the property as against such creditors.

*Christensen & Tuttle,* for respondent.

Appellant claims that plaintiff, by his conduct, was estopped *in pais* from asserting ownership as against this defendant sheriff and the execution creditor. He let his father have the property to use. Should he be punished for that? Was that negligence on his part? He allowed his father to borrow money on that property; was that negligence on his part as against the sheriff and the judgment creditors? As against the mortgagee there would be no question, but he would be estopped, but the debt upon which the judgment was obtained was incurred long before the mortgage was given, so that any act or negligence on the part of plaintiff in that matter

did not induce the creditor to put itself in a different relation to his parents, nor is there any evidence to show that it gave credit to his parents because of his acts, or any negligence of his.

VANDERBURGH, J.   The defendant, Swensen, as sheriff, levied on and sold the personal property in controversy, upon an execution issued on a judgment against Samuel Olson and wife, in favor of the Sidle-Fletcher-Holmes Company.   The plaintiff, who is the son of the execution defendants, claims that he owned the property, and seeks by this action to recover the value thereof.

Upon the trial he testified that his father was engaged in the bakery business, and the establishment was known as the "Riverside Bakery," and that all the property in question was in the possession of his father, and used in the business of the Riverside bakery; and the name "Riverside Bakery" was painted on the delivery wagon which was so used by him.   All the property was used and treated as the property of the Riverside bakery, apparently with his knowledge and consent.   He also worked under his father in the business, and the property was furnished for the business, and used in connection with it.   He also testifies that he went to work for his father about three years before he went to Madelia, which was in 1890, and says: "I was in as a partner, and was going to get so much out of the partnership before I left him. * * * I did not start in to work for my father as soon as he went into business there.   I furnished him the money, and then went to work to drive wagons for him.   I started to work for my father about as soon as he started in business,—three years before I went to Madelia.   He was baking a couple of weeks before I went in with him.   Then I went to work under this deal:   These horses were used in connection with that business.   One of them was driven on this one of the delivery wagons.   The sign 'Riverside Bakery' was painted on that delivery wagon.   That was the name of the bakery or business carried on there.   My father was owing me money all this time.   He is owing me now.   When I went to Madelia, we squared up then; was about square."   He further testified:   "I was acquainted with the manager of the Sidle-Fletcher-Holmes Company before I went to Madelia.   The Riverside bakery was dealing with them, and had been dealing with them

some time." In addition to this, he permitted his father to mortgage the property as his own. This evidence by the plaintiff in his own behalf, unexplained or qualified, it seems to us not only warranted, but required, the jury to find that he was interested in the bakery, and that the horses and wagons were not only used in the business, but, as to the public and particularly creditors dealing with the bakery, should be treated as a part of its property and assets. Plaintiff was in the business, furnished money for it, and put the property into the business, and when he quit and went to Madelia; he squared up with his father, and left the property in the business as before. He testified that he was a partner, and, whether the relations between him and his parents were strictly such or not, he ought not to be permitted to dispute that the property in question belonged to the Riverside bakery, or the firm of S. Olson & Co. In this view of the case, the court erred in not directing a verdict for the defendants.

2. The plaintiff was asked on the cross-examination whether he had reported to the Bradstreet Commercial Agency as to the property invested in the business, and to whom it belonged. The ruling of the court sustaining the plaintiff's objection to this evidence is assigned as error.

We think the court erred in rejecting the evidence. It was certainly proper on the cross-examination to inquire of the plaintiff touching his admissions made to third parties in respect to the ownership of this property. It is true that the question did not particularly specify the date of the conversation, but the objection was not rested on this ground.

3. The evidence of the declarations of S. Olson and his wife that they were the owners of the property in controversy were properly ruled out as hearsay, under the issues in this case. They were evidently offered for the purpose of establishing title in them, and not merely as explanatory of their possession. This point was ruled on by this court in a similar case. *King* v. *Frost*, 28 Minn. 417, (10 N. W. Rep. 423.) And see dissenting opinion of Dixon, C. J., in *Roebke* v. *Andrews*, 26 Wis. 312.

Order reversed, and new trial granted.

(Opinion published 55 N. W. Rep. 596.)